UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                                  )
Mutual Insurance Company, Limited                   )
        Plaintiff,                                                  )
v.                                                                   )        **Civil Action No.  07-11532 PBS**
                                                                  )
The Honorable Ernest B. Murphy,                      )
        Defendant.                                               )
_____)

**MEMORANDUM OF MUTUAL INSURANCE COMPANY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Mutual Insurance Company Limited ("Mutual") moves for summary judgment against

Honorable Ernest B. Murphy ("Judge Murphy") on Count I of its Complaint and on Judge

Murphy's Counterclaim.

**<u>BACKGROUND</u>**

On June 3, 2002, Judge Murphy commenced a defamation action in the Massachusetts

Superior Court against the Boston Herald ("Hera ld") and four Herald reporters and columnists.

(*See* Exs. 1 and 2, ¶¶ 1 attached to Mutual's 56.1 Statement of Undisputed Facts.)  Judge Murphy

alleged the Herald defamed him in the February 13, 14, and 17, 2002 editions of the newspaper.

The trial of Judge Murphy's defamation claims took place in January and February of

2005.  (Exs. 1 and 2, ¶¶ 18.)  The trial court directed verdicts for two of the Herald reporters and

columnist.  (Exs. 1 and 2, ¶¶ 19.)  After four days of deliberations, the jury returned a verdict for

Judge Murphy and against the Herald and one reporter, David Wedge.  (Exs. 1 and 2, ¶¶ 20 and

Ex. 3.)  Damages of $2.09 million were awarded by the jury.  (Ex. 3, pg. 46.)

The Herald and Mr. Wedge appealed and the Supreme Judicial Court ("SJC") granted an

Application For Direct Appellate Review.  On May 7, 2007, the SJC affirmed the defamation

Judgment as modified by the Court.  (Ex. 3.)  Three days after the SJC denied a Petition For

Rehearing, the Judgment in favor of Judge Murphy was satisfied in full.  (Exs. 1 and 2, ¶¶ 47, *see also*, Ex. 8, pgs. 41-42, Ex. 10, pg. 135.)

Shortly after receiving $3,414,687 in satisfaction of the defamation Judgment, Judge Murphy made a demand on Mutual pursuant to M.G.L. c. 93A.  (Ex. 4.)  Judge Murphy alleged Mutual committed unfair and deceptive acts under M.G.L. c. 176D in refusing to effect a prompt settlement of the defamation action after the liability of the Herald was reasonably clear and arising from Mutual's purported failure to conduct a reasonable investigation before allegedly refusing to satisfy the defamation Judgment.  He demanded $6,800,000.  (Ex. 4, pgs. 2-3.)

On August 17, 2007, Mutual commenced this action under 28 U.S.C. § 2201 seeking a declaration of its non-liability under c. 93A and c. 176D.  (Ex. 1.)  Mutual requested a declaration that it has acted lawfully and has not violated c. 93A or c. 176D for multiple reasons, including that under the terms of its policy with the Herald, the Herald, not Mutual, controlled the defense and settlement of Judge Murphy's defamation action.  (Ex. 1.)  Judge Murphy answered Mutual's Complaint and asserted a Counterclaim alleging that Mutual's conduct violated c. 176D and c. 93A.  (Ex. 2, ¶ 62.)  According to his answers to Mutual's interrogatories, Judge Murphy's Counterclaim arises from Mutual failure to make an offer of settlement when the liability of the Herald was reasonably clear; failing to conduct any independent legal analysis of the merits of the appeal and authorizing an appeal that was entirely without legal merit.  (*See* Ex. 6, answer 1.)

## STATEMENT OF UNDISPUTED FACTS

### A.    The Mutual Policy.

At the time Judge Murphy filed suit against the Herald, the Herald was insured under a specialized policy of media insurance issued by Mutual.  (Ex. 7 and Ex. 8, pg. 15.)  Mutual

writes "a limited line of coverage designed to protect newspapers' rights under the First Amendment." (Ex. 8, pg. 63.) There is nothing in Mutual's "business model" that is "profit motivated." (Ex. 8, pg. 63.) Its sole purpose is "to permit publishers in this country and in this Commonwealth to publish under the First Amendment." (Ex. 8, pg. 63.)

The Mutual policy is not a traditional liability policy covering the first dollar of loss. (Ex. 7.) Rather, the policy attaches excess of an insured's self-insured retention and the policy does not impose a duty on Mutual to defend its insured nor give Mutual control over the settlement of claims made against its insureds. (Ex. 7, pgs. 3148-3149, Section I; Ex. 8, pgs. 43, 58-60.) Under the terms of Mutual's Policy, the Herald retains the first $50,000 of loss including defense expense. (Ex. 7, pg. 3147, Declarations.) After the exhaustion of Herald's $50,000 self-insured retention, the Herald is responsible for 20% of all remaining defense expense up to a maximum retention of $500,000. (Ex. 7, pg. 3147, Declarations and Ex. 8, pg. 21.)

The first page of Mutual's policy conspicuously states it has no duty to defend the Herald. (Ex. 7, pg. 3148.) Further, Section VIII(B)(3) of the policy provides: "The Company shall not be called upon to assume charge of the settlement, or the defense of any claim made, or suit brought, or proceeding instituted against the insured…" (Ex. 7, pg. 3154.) The policy provides that the Herald cannot settle any claim without Mutual's consent, but "such consent not to be unreasonably withheld."[1] (Ex. 7, pg. 3154, Section VIII(B)(3), Ex. 10, pgs. 102, 105.)

### B.   The Herald Controlled The Defense And Settlement Of Judge Murphy's Claims.

Upon learning of Judge Murphy's claim the Herald retained Brown Rudnick, the law firm that has handled all of its general liability and media liability work since 1994. (Ex. 10, pgs. 16-

---

[1]  Because of a media entity's reputational stake in the outcome of litigation involving defamation claims, media policies traditionally give the insured, not the insurer, control over the defense and settlement of claims. *See* Kent D. Syverud, *The Duty to Settle*, 76 Va. L. Rev. 1113, 1184 (1990).

17, 39.)  The Herald was self-insured with respect to its $50,000 retention and the Mutual policy provided coverage on an excess basis over $50,000.  (Ex. 10, pgs. 21, 156.)  The Herald had the right to defend itself and to choose its own counsel.  (Ex. 8, pg. 60, Ex. 10, pg. 31, 98.)  At all relevant times, including at least up through the filing of the Herald's appellate brief, the Herald's co-insurance obligation maximum of $500,000 was not met.  (Ex. 10, pg. 27.)

From the commencement of Judge Murphy's defamation action through the denial of the Herald's Petition For Reconsideration by the SJC, the Herald controlled its own defense.  (Ex. 8, pgs. 66-67, 70-71; Ex. 10, pgs. 44, 48-50, 97.)  The Herald expected it would win the defamation case based on the belief that its stories and coverage were correct.  (Ex. 10, pg. 94.)  During the pendency of the defamation action, the Herald never requested Mutual's consent to settle Judge Murphy's claim.  (Ex. 10, pg. 155.)  Mutual did not have the right to settle Judge Murphy's claim without the Herald's permission.  (Ex. 8, pgs. 70-71, Ex. 10, pgs. 43-44, 102, 105.)

The Herald was very unhappy it lost the trial and "believe that the reporter got the story correct."  (Ex. 10, pg. 44.)  The Herald made the decision to appeal.  (Ex. 8, pgs 76, 128-129; Ex. 10, pg. 46.)  It "believed in its reporting in the case, and [it] planned to defend the reporter and to defend the reputation of the paper and to appeal the case."  (Ex. 10, pg. 112.)  Mutual had "no role" in the decision to appeal.  (Ex. 8, pg. 129.)

The Herald wanted new counsel for the appeal.  (Ex. 8, pg. 80-81; Ex. 10, pg. 46.)  As part of the Herald's selection of new counsel, Mutual suggested that appellate counsel conduct an objective review of the trial prior to filing the appeal "as opposed to simply noting the appeal and charging forward."  (Ex. 8, pg. 76.)  The Herald engaged Attorney Bruce Sanford of the Washington, D.C. firm Baker & Hostetler to be its new counsel.  (Ex. 8, pgs 84-85; Ex. 10, pg. 17.)  He was the Herald's choice for appellate counsel.  (Ex. 8, pg. 124-126.)  Baker & Hostetler

represented the Herald on labor law matters and it was Mr. Purcell's decision to hire that firm for the appeal.  (Ex. 8, pgs. 83-84; 124-125, 127; Ex. 10 pg. 17, 114.)

As requested by Mr. Purcell, Mutual had provided names of experienced appellate counsel who were qualified to provide an objective opinion of the merits of the appeal and were qualified to handle the appeal.  (Ex. 8, pg. 81, 83-84, 125, 159-160, Ex. 10, pg. 113.)  However, in terms of deciding whether to hire new counsel or stay with Brown Rudnick or the selection of new counsel, Mutual did not have any part in those decisions.  (Ex. 8, pg. 84.)

While post-trial motions were pending before the Superior Court, Mutual jointly engage Baker & Hostetler with the Herald to evaluate the appeal.  (Ex. 8, pg. 93-95.)  Mutual and the Herald wanted to make sure they were "not tilting at windmills."  (Ex. 8, pg. 87-88.)  Baker & Hostetler gave an objective opinion as to the probability of the success of the appeal to Mutual and the Herald.  (Ex. 8, pg. 95.)  Baker & Hostetler's joint representation of the Herald and Mutual ended on November 8, 2005, the day Attorney Stanford issued his opinion as to the probability of overturning the verdict.  (Ex. 8, pgs. 95-96, Ex. 10, 115, Ex. 11.)  Six days later, on November 14, 2005, the Herald and Mr. Wedge filed their Notice of Appeal.  (Exs. 1 and 2, ¶¶ 33, Ex. 8, pgs. 95-96, Ex. 10, pg. 115, 122.)

Throughout the pendency of the appeal, even after oral argument before the SJC, the Herald continued to believe it would win the appeal.  (Ex. 10, pg. 124, 132.)  The SJC's decision was a surprise and a disappointment to the Herald's management.  (Ex. 10, pg. 140.)  After the denial of a Petition For Rehearing, the Herald decided not to file a petition seeking certiorari from the Supreme Court and to pay the Judgment.  (Ex. 10, 137-140.)  Counsel for the Herald and Judge Murphy calculated the amount of the Judgment including all accrued post-judgment interest.  (Ex. 8, pg. 41-42, 195.)  The Herald authorized Mutual to pay the agreed (as between

the Herald and Mutual) reimbursement to the Herald's counsel for transmittal to Murphy.  (Ex. 8, pg. 41-42, 195; Ex. 10, pg. 135.)  Mutual wired $3.4 million to the Herald's counsel.  (Ex. 8, pg. 41-42.)  Three days after the SJC denied the Petition For Rehearing, the defamation Judgment was satisfied in full.  (Ex. 8, pgs. 41-42; Ex 10, pg. 135.)

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD.

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir. 1991). The burden is upon the moving party to show there is no genuine issue as to any material fact and it is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The determination of whether conduct is unfair or deceptive is a question of fact, but whether that conduct rises to the level of a chapter 93A violation is a question of law.  *Federal Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 34 (1st Cir. 2007); *see* also *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414, 578 N.E.2d 789, 803 (1991)("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a G. L. c. 93A violation is a question of law.")

### II.   MUTUAL DID NOT HAVE A DUTY TO SETTLE JUDGE MURPHY'S CLAIM BECAUSE THE HERALD CONTROLLED ITS DEFENSE AND SETTLEMENT.

#### A.   The Duty To Settle.

The insuring clause of a traditional liability policy requires an insurer to perform two related obligations: (1) to defend any claim against the insured within the scope of coverage,

even if any of the allegations are groundless, false, or fraudulent, and (2) pay on behalf of the insured any damages awarded against him within the scope of coverage up to the policy limits. These contractual obligations, along with language in the insuring clause granting control over the insured's defense to an insurer, give rise to a third, generally recognized, implied duty of liability insurers – the duty to settle within policy limits. *See* Kent D. Syverud, *The Duty to Settle*, 76 Va. L. Rev. 1113, 1117-26 (1990); Robert E. Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1137-48 (1954).

The duty to settle doctrine derives from the control over defense and settlement given to an insurer in a standard liability policy.

> Related to the duty to defend is the "duty to settle," although the duty to settle does not arise as obviously from the text of the insurance policy. The typical liability policy states quite clearly that the insurer has the right and obligation to defend the policyholder against claim. By contrast, regarding settlement, the typical policy provides that the insurer has "discretion to investigate any 'occurrence' and settle any claim or 'suit' that may result," without specifically delineating the duties of the insurer. However, it appears that almost all jurisdictions have implied from the insurer's control over settlement established in the policy text a duty to both to make reasonable efforts to resolve a claim and to accept reasonable settlement offers by the claimant.

J.W. Stempel, *Stempel On Insurance Contracts*, §9.05.

Numerous cases recognize that it is an insurer's control of an insured's defense and its right to settle claims that give rise to an insurer's duty to settle. These cases include: *St. Paul Fire & Marine v Convalescent Serv*, 193 F.3d 340, 342 (5th Cir. 1999)(an insurer must exercise care when responding to settlement demands and "[t]his well-recognized duty arises from the obligations to defend and indemnify pursuant to the insurance contract and the control the policy grants to the insurer over the insured's defense."); *Liberty Mutual Ins. Co. v. Oliver Davis Et Ux.*, 412 F.2d 475, 484 (5th Cir. 1969)(the duty to settle arises out of the contractual relationship of insured and insurer as a result of the insurer's exclusive control of all questions of liability,

settlement or the defense of claims against the insured); *Bollinger v. Nuss*, 449 P.2d 502, 511 (1969)(insurer's refusal to settle constituted a breach of its duty to exercise good faith where the insurer has admitted coverage and assumed control of the defense and settlement.); *Pavia v .State Farm Mut. Automobile Ins, Co.,* 605 N.Y.S.2d 208, 211, 626 N.E.2d 24, 28 (1993) ("At the root of the 'bad faith' doctrine is the fact that insurers typically exercise complete control over the settlement and defense of claims against their insureds.")

### B.   The Massachusetts Common Law Duty To Settle In Good Faith.

The duty of a liability insurer in Massachusetts to act in good faith in settlement of a claim or suit was recognized in the 1959 by the SJC in *Murach v. Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 158 N.E.2d 338 (1959).  In *Murach,* a claimant was struck by a car whose driver was insured under a motor vehicle liability policy that had a $10,000 liability limit and the claimant offered to settle for $9,300.  The insurer refused to settle and at trial the jury awarded damages to the claimant of $29,887.07.  *Murach,* 339 Mass at 185-86, 158 NE2d at 339-340.

The insured then brought suit against the insurer seeking to hold the insurer liable for the for its failure to settle the tort claim that resulted in the verdict in excess of the insured's $10,000 policy limit.  After noting that the policy terms prohibited the insured from settling the claim at its own expense and quoting the terms of the policy that gave the insurer exclusive control of the issues of defense and settlement, the SJC recognized:

> Although this [policy] language leaves the matter of settlement entirely to the insurer's discretion, its privilege in this respect imports a reciprocal obligation for its exercise. That obligation is to act in good faith...To mitigate the danger…that the insurer will favor its own interest to the exclusion of the insured's, good faith requires that it make the decision (whether to settle a claim within the limits of the policy or to try the case) as it would if no policy limit were applicable to the claim.

*Id*. at 186-87, 158 N.E.2d at 340-41, internal citations omitted.

Although an insurer's common law duty to settle in Massachusetts has now been largely overtaken by c. 93A and c. 176D, *see* Billings, *The Massachusetts Law of Unfair Insurance Claim Settlement Practices*, 76 Mass. Law Rev. at 56, as set forth below, the fundamental principle remains unchanged: it is the insurer's control over defense and settlement that gives rise to a duty to settle under Massachusetts law.

### C.      Chapter 93A and Chapter 176D.

Chapter 93A is a consumer protection statute that makes unlawful "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce…"  Chapter 93A, §2(a).  Here, Judge Murphy is alleging Mutual's conduct constitutes unfair and deceptive practices in violation of c. 93A, § 2.  His allegations track the prohibitions in c. 176D, § 3(9) which prohibits unfair or deceptive acts or practices in the business of insurance.  Conduct prohibited under c. 176D, § 3(9), when committed by an entity engaged in the business of insurance, may violate G. L. c. 93A, § 2, and give rise to a cause of action under c. 93A, § 9.  *See* 93A, § 9(1).

Chapter 176D, § 3 defines "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance" as including, among other things, "unfair claim settlement practices."  Subsection 9 delineates fourteen acts or omissions that constitute unfair claim settlement practices, including "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information" and "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  Chapter 176D § 3(9)(d) and (f).  An insurer's duties under c. 176D to effect a prompt settlement extends to third party claimants.  *Clegg v. Butler*, 424 Mass. 413, 419 n. 5, 676 N.E.2d 1134, 1139 (1997)(clause (f) of c. 176d "appl[ies] to any party whose legal interest might be adversely affected by an insurer's failure to effectuate settlement where liability is reasonably clear.").

As articulated by the SJC, c. 93A and c. 176D "were enacted to encourage settlement of *insurance claims*…and discourage insurers from forcing claimants into unnecessary litigation to obtain relief." *Clegg v. Butler*, 424 Mass. at 419, 676 N.E.2d at 1139.  The claim settlement prohibitions set forth in c. 176D were "designed to remedy a host of possible violations in the insurance industry" and c. 176D was imported into c. 93A so that insurers committing violations of c. 176D were subject to the remedies available to an injured party under c. 93A. *Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556, 562, 750 N.E.2d 943, 948 (2001).

**D.      Mutual Had No Duty To Judge Murphy To Effect Settlement.**

An insurer's obligations of good faith to a third party claimant under c. 93A and c. 176D arise from an insurer's "exclusive" control of an insured's defense and of settlement. *Morrison v. Toys "R" Us, Inc.*, 441 Mass. 451, 455, 806 N.E.2d 388, 390 (2004).  In *Morrison*, it was held that a self-insured entity that employed claims adjusters to administer and negotiate claims was not subject to liability under c. 93A and c. 176D for unfair claims settlement practices because a decision to self-insure does not transform the self-insured into an insurer.  *Id.*  The Court further held that an interpretation of c. 176D that exposed ordinary defendants, including large corporations such as Toys "R" Us, to multiple damages under c. 93A "for choosing to go to court rather than settling" would not serve the purposes behind the enactment of the statute.  *Id.* at 458. In so holding, the Court emphasized that that the "*obvious*" intent of the legislature in incorporating the prohibitions set forth in c. 176D, § 3 (9) into c. 93A was that "entities that profit from selling insurance policies not abuse *exclusive* rights and duties *to control litigation* vested through those same policies."  *Id.* at 455 (emphasis added).

In *Morrison*, the SJC recognized that c. 176D is not a "blanket guarantee" that claims will be settled before they go to court.  *Id.* at 458.  The Court quoted "with approval" the

Supreme Court of Kentucky's reasoning in *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000):

> The gravamen of [the Kentucky unfair claims settlement statute] is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company *is contractually obligated to pay.* Absent a contractual obligation, there simply is no bad faith cause of action either at common law or by statute.

*Id.* at 457, n. 3 (emphasis in original.)

Here, the Herald, like Toys "R" Us in *Morrison,* decided to assume (self-insure) the duty to defend. The Herald also self-insured the first $50,000 of its own liability and 20% up to $500,000 of the costs of its defense. The Mutual Policy is not a liability policy but is an indemnity policy: it obligates Mutual to indemnify the Herald for its paid loss "by reason of liability imposed by law…" (Exhibit 7, Section I.) The Policy is in contrast to traditional liability policies that require an insurer to pay a loss on behalf of its insured. *Sta-Rite Industries, Inc. v. Zurich Re (U.K.) Ltd.*, 178 F.3d 883 (7th Cir. 1999)("A traditional liability insurance policy confers the right to settle and defend any claims on the insurer and prevents the insured from participating in the defense of a claim. A traditional indemnity policy, by contrast, leaves the duty to settle and defend on the insured, requiring the insurer to indemnify the insured for claims incurred within the policy's coverage.")

Under the terms of the Mutual policy, the Herald had duty to conduct an investigation of any potential claim and the Herald had the duty to retain counsel for the defense or settlement of a claim. (Ex. 7, pgs. 3153-3154, Section VIII – General Conditions, subsection (2)(a), (b) and (c)). Mutual had no duty to defend the Herald. (Ex. 7, pg. 3154, Section VIII – General Conditions, subsection (3)). Consistent with Mutual's role as an excess indemnity insurer, the undisputed evidence is that the Herald controlled all aspects of its own defense and settlement,

11

including whether to negotiate with Judge Murphy prior to and after the trial.  (Ex. 8, pgs. 59-60, 66-67, 70-71; Ex. 10, pgs. 31, 48-50, 97-98.)  In the circumstances where Mutual's policy attached excess of the Herald's self-insured retention and the Herald controlled the settlement of Judge Murphy's claim, Mutual had no duty to settle his claim under c. 176D § 3(9).  *Clegg v. Butler*, 424 Mass. 413, 421 n. 8, 676 N.E.2d 1134, 1140 (1997); *Rhodes v. AIG Domestic Claims, Inc.,* 2008 Mass. Super. Lexis 169.

In *Clegg*, the plaintiff was seriously injured in a two-car automobile accident after the vehicle driven by the defendant struck the plaintiff's automobile in a head-on collision.  At the time of the accident, the defendant was insured by a primary automobile policy with Utica Mutual and an excess insurance policy issued by Merrimack Mutual.  *Clegg v. Butler*, 424 Mass. at 414, 676 N.E.2d at 1136.  Utica's primary policy limits of $250,000 were not offered in settlement until mediation just before trial and, once those limits were offered at the mediation, the excess insurer immediately agreed to pay $425,000, and the case settled for a combined amount of $675,000.  *Id*. at 416, 1137.

A c. 93A claim was then pursued by the plaintiff against Utica, the primary insurer, for failing to have effectuated a prompt settlement once liability was reasonably clear under c. 176D, § 3(9)(f).  In affirming the trial court's liability finding against the primary insurer, the SJC observed that as to the excess insurer, its duty to settle was not triggered until the primary insurer had offered its policy limits in settlement.

> Until Utica [the primary insurer] was prepared to address the possibility that the [plaintiffs] were entitled to its policy limits, Merrimack, as the excess insurer, had no reason to know that it would be required to provide compensation from its policy to the [plaintiffs], and thus no reason to examine or determine the extent of its liability…[T]he excess insurer has *no obligation* or incentive to make an explicit commitment until the primary insurer has acted.

Id. at 421 n. 8, 1140, n. 8.

Likewise, in a recent and thoughtfully decided Superior Court decision in *Rhodes v. AIG Domestic Claims, Inc.,* 2008 Mass. Super. Lexis 169 (Gants, J.), it was held that until the excess insurer obtained the primary insurer's tender of its policy limits, the excess insurer had *no duty* under c. 176 §3(9)(f) to make any settlement offer to the plaintiffs.

> [U]ntil [the excess insurer] obtained [the primary insurer's] verbal tender on January 23, 2004, AIGDC, as the excess insurer, had no duty to make any settlement offer to the [plaintiffs]. However, once that tender was made, [the excess insurer] assumed responsibility for and control over the [the plaintiffs] claim, including the responsibility to make a prompt and fair settlement offer.

*Id.* at 66. Like the excess insurers in *Clegg* and *Rhodes*, in this case Mutual had no duty to settle unless and until the Herald decided to settle and sought Mutual's permission to settle.

This court, in *Behn v. Legion Ins. Co.*, 173 F. Supp. 2d 105, 117 (D. Mass. 2001), addressed, in dicta, the issue of an insurer's obligation to settle under c. 176D where a medical professional refused to consent to settlement. In that case, the court concluded that liability in the underlying psychiatric malpractice action was never reasonably clear such that the psychiatrist's insurer did not violate c. 93A or c. 176D. In so holding, the court observed "it was not improper for [the insurer] to consider [the psychiatrist's] refusal to consent to settlement in deciding not to make even a nominal settlement offer to dispose of the case." *Id.* at 117.

In the recent decision of *Tilton v. Nat'l Union Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 22200, (D. Mass. 2008), an insured had a multi-layer insurance program but retained the first five million in general liability exposure. The insured obtained liability coverage from a primary insurer but agreed to indemnify the primary insurer for any claims paid within the first $5 million of loss. *Id.* at 2-3. The court properly recognized the insurer's policy as a "fronting policy" in which the insured was self-insured up to five million dollars. *Id.* After a loss and a substantial verdict for the plaintiff, the plaintiff brought a c. 93A and c. 176D action against the insurer for

its failure to settle the underlying tort case.  *Id.*  In granting summary to the insurer, this court, Zobel, J., held that in the circumstances "it is difficult to conceive of any obligations [the insurer] may have had to plaintiff" to settle the claim under c. 93A and c. 176D.  *Id.*, *citing Morrison v. Toys "R" Us, Inc.*, 441 Mass. 451, 455, 806 N.E.2d 388, 390 (2004).

The Massachusetts Appeals Court in *O'Connell v. Reliance Ins. Co.*, 50 Mass. App. Ct. 334, 707 N.E.2d. 13 (2000), addressed an insurer's liability under c. 93A and c. 176D where the insured had a large self-insured retention.  The plaintiff suffered a fractured wrist and her claim was eventfully resolved for $22,270.  *Id.* at 335.  In affirming summary judgment for the insurer with respect to a plaintiff's c. 93A and c. 176D, the Appeals Court held the insurer "could reasonably conclude, as it did, that it had *no duty* with respect to a claim clearly within [the insured's] retention."  *Id.* at 337 (emphasis added).

Numerous cases from other state courts reach a similar result.  In *Carlile v. Farmers Ins. Exch.*, 173 Cal. App. 3d 975, 219 Cal. Rptr. 773, 777 (1985), the California Court of Appeals held that an insurer did not violate California's version of c. 176D, Cal. Insurance Code section 790.03 subdivision (h)(5), in the circumstances where a professional malpractice liability policy contained a "consent to settle" clause and the insured refused to give its consent to a settlement.[2] In so holding, the court observed that the insurer does not act in bad faith toward a third party claimant because "the insurer legitimately accedes to the wishes" of its insured.  *Id.*

Likewise, the Supreme Court of Kentucky in *Am. Physicians Assur. Corp. v. Schmidt*, 187 S.W.3d 313 (Ky. 2006), held that where an insured retains the right to consent to settlement

---

[2] M.G.L. c. 176D is an almost verbatim adoption of the 1971 version of the model act formulated by the National Association of Insurance Commissioners (NAIC) entitled "An Act Relating to Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance."  The NAIC model act has been adopted in one form or another in all fifty states and all territories of the United States.

and withholds that consent, the insurer's failure to settle cannot be in "bad faith."  *Id.* at 317-318.

The District Court For the Northern District Of Illinois, applying Illinois law, has held:

> [N]o Illinois court has ever placed a duty to settle upon an insurer who did not actually control all aspects of the defense and settlement of the case.  This Court refuses to stretch the duty to settle to apply in a situation where the insurer had anything less than complete control.  This duty to settle was created because "the policyholder has relinquished defense of the suit to the insurer;" leaving the insured to depend upon the insurer to conduct the defense properly.

*Liberty Mut. Ins. Co. v. Am. Home Assurance Co.*, 348 F. Supp. 2d 940, 963 (D. Ill. 2004).

> The Eight Circuit has held:

> A cause of action for bad faith failure to settle is based not on the defendant's status as a liability insurer but, rather, on a particular balance of power.  When one party assumes control of the right to settle claims, then that party has the duty to exercise good faith in considering offers to compromise the claim. In other words, an action for bad faith refusal to settle does not lie unless the defendant reserved to itself the exclusive right to accept an offer to compromise a claim and to settle a dispute.

*Quick v. National Auto Credit*, 65 F.3d 741, 745 (8th Cir. 1995)(internal citations omitted.)

Other cases reaching the same result include: *Sta-Rite Industries, Inc. v. Zurich Re (U.K.) Ltd.*, 178 F.3d 883, 885 (7th Cir. 1999) (the Seventh Circuit, applying Wisconsin law, held that an insurer that did not have the exclusive right to control an insured's defense or settlement of a claim did not breach a duty of good faith in rejecting a settlement demand); *National Union Fire Insurance co. of Pittsburgh, Pennsylvania v. CNA Insurance Companies*, 28 F.3d 29, 33, n. 5 (5th Cir. 1994)("[T]he terms of the policy gave [the insured] and not [the insurer], the authority to control the defense of litigation, including settlement negotiations.  Lacking such control, [the insurer] could not have possessed a duty to settle within the lower-level coverage limits."); *Eklund v. Safeco Ins. Co. of Am.*, 41 Colo. App. 96, 579 P.2d 1185, 1187 (Colo. Ct. App. 1978) (holding insurer entitled to summary judgment in action by insured's bankruptcy trustee seeking to hold insurer liable for excess judgment when insured had adamantly opposed settlement).

The evidence is undisputed that the Herald controlled settlement of Judge Murphy's claim and it did not request permission from Mutual to resolve the defamation Judgment until after the SJC denied its request for a rehearing.  Mutual, like the excess insurers in *Clegg*, *Rhodes* and *O'Connell* and the insurers in the other cases cited above had no duty to settle and it is entitled to summary judgment on Count 1 of its Complaint and Judge Murphy's Counterclaim.

III.   **FORCING MUTUAL TO SETTLE JUDGE MURPHY'S CLAIMS AGAINST THE HERALD'S WISHES AND ITS POLICY'S PROVISIONS WOULD INTERFERE WITH THE HERALDS CONTRACTUAL RIGHTS.**

The Herald, one of Boston's two major metropolitan newspapers, had a reputational stake in defending itself and its reporters from the defamation claims asserted against it by Judge Murphy.  (Ex. 10, pgs. 112, 119-120.)  Because of its reputational stake in the outcome of any litigation involving defamation or related claims, the Herald, like most major media entities, structured its insurance program so that it controlled the decision to settle any such claims.  *See* Syverud, *The Duty to Settle*, 76 Va. Law Rev. 1113, 1184 (1990)(because of a media's entity's reputational stake in the outcome of litigation involving defamation or related claims, media policies traditionally give the insured, not the insurer, control over the defense and settlement of claims.)

Believing the stories and columns it published about Judge Murphy to be accurate, the Herald decided not to settle Judge Murphy's claim and vigorously defended itself and its reporters and columnists.  (Ex. 8, pg. 79-80; Ex. 10, pg. 96.)  After the defamation trial, the Herald, not Mutual, elected to appeal the jury's adverse verdict.  (Ex. 8, pg. 76, 128-129; Ex. 10, pg. 46.)  It was not until after the Herald's appeal was rejected by the SJC and its Petition for Rehearing was denied, that the Herald first asked Mutual's consent to resolve Judge Murphy's claim.  That consent was immediately given by Mutual and the Judgment in favor of Judge

Murphy, including all accrued interest, was then satisfied.  (Ex. 8, pg. 41-42, 195; Ex.. 10, pg. 135, 137-140.)

Judge Murphy now claims that Mutual violated c. 176D § 3(9)(f) by failing to settle when liability was reasonably clear.  (Ex. 2, ¶¶ 27, 29, 47, 62, 72.)  Whether liability is reasonably clear is measured by an "objective standard of inquiry into the facts and the applicable law." *Demeo v. State Farm Mutual Insurance Co.*, 38 Mass. App. Ct. 955, 956, 649 N.E.2d 803 (1995).  In *Clegg v. Butler*, the SJC stated that "liability is not 'reasonably clear' if it is still the subject of a good faith disagreement."  424 Mass. at 418, 676 N.E.2d at 1138.  It is settled Massachusetts law that an insurer does not violate c. 93A or c. 176D where there are unresolved questions whether its policy provides coverage for a loss.  *See Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704, 671 N.E.2d 1243 (1996) (plaintiff's claims for violation of c. 176D and c. 93A were not viable where coverage was found not to exist); *Andrade v. Aetna Life & Cas. Co.*, 1995 Mass. Super. LEXIS 550 (Mass. Super. Ct. June 12, 1995)(holding that insurer's refusal to respond to a demand letter with a tender of settlement was reasonable given the unclear status of the issue of coverage.)

During the entire course of Judge Murphy's defamation action the Herald never requested Mutual's consent to settle his claim.  (Ex. 8, pg. 80; Ex. 10, pg. 155.)  Having never been asked by the Herald to consent to a settlement and because it did not have the contractual right to settle Judge Murphy's claim against the Herald's wishes (Ex. 10, pgs. 43-44, 103, 105), Mutual's payment obligation under its policy did not arise and its liability was never reasonably clear under c 93A or c. 176D.

Judge Murphy's claim against Mutual is an attempt to whipsaw Mutual between its contractual duty to the Herald to allow the Herald to control settlement of defamation claims and

a duty imposed on insurers by c. 176D § 3(9)(f) to settle third party claims.  The imposition of a

duty to settle on Mutual in the circumstances of this case would present Mutual with a Hobson's

choice: breach its policy with the Herald and settle Judge Murphy's claim out from under the

Herald (and thereby face liability to the Herald) or face liability to Judge Murphy for not settling

his claim under c. 176D.  The right of tort claimants under c. 176D § 3(9)(f) to have an insurer

effect prompt settlement of a claim when liability is clear must be harmonized with the insurer's

obligations to its insured.  As recognized by the First Circuit:

> The insurer's duty, of course, is to its insured.  It owes no correlative contractual duty to
> third-party claimants...Courts should not permit bad faith in the insurance milieu to
> become a game of cat-and-mouse between claimants and insurer, letting claimants induce
> damages that they then seek to recover, whilst relegating the insured to the sidelines as if
> only a mildly curious spectator.

*Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 834-35 (1st Cir. 1990).

Neither c. 93A or c. 176D § 3(9)(f) can be reasonably read as imposing a duty on Mutual

to breach its insurance contract with the Herald and settle Judge Murphy's claim against the

Herald's wishes. "[C]ourts should not impose an obligation on an insurer that contravenes a

provision in its insurance policy."  *United States Fire Insurance Company v. Peerless Insurance

Company*, 14 Mass. L. Rptr. 121 (2002), *quoting*, *Truck Ins. Exchange v. Unigard Insurance

Co.*, 79 Cal. App. 4th 966, 974 (2000).  If Mutual settled Judge Murphy's claims against the

Herald's wishes, it would be exposed to liability to the Herald.  *See Brion v. Vigilant Ins. Co.*,

651 S.W.2d 183,184-85 (Mo. Ct. App. 1983) (holding that insured psychiatrist could maintain

cause of action against insurer for settlement of patient's malpractice claim without psychiatrist's

consent); *Lieberman v. Employers Ins. of Wausau*, 419 A.2d 417, 423-25 (N.J. 1980) (holding

that insured neurosurgeon could maintain cause of action against both insurer and attorney for

settlement of patient's malpractice claim without neurosurgeon's consent).

The SJC has already confronted the issue of conflicting duties imposed on an insurer by the duty to settle in c. 176D § 3(9)(f) and an insurer's duties to its insured and has concluded that an insurer's duty to its insured prevail over any duty owed to a third party claimant.  *See Lazaris v. Metropolitan Prop. & Cas. Ins. Co.,* 428 Mass. 502, 703 N.E.2d 205 (1998).  In *Lazaris*, the Court held that an insurer's duty to settle under c. 176D § 3(9)(f) cannot be construed to require an insurer to breach duties owed to its insured.  *Id.* at 506.  In that case, the court confronted the issue of whether an insurer had a duty to settle a third party-claim where liability was reasonably clear but the claimant refused to give the insured a release.  The Massachusetts Appeals Court had previously ruled that an insurer violates c. 176D, § 3(9)(f) by conditioning settlement of a third-party claim on the claimant releasing its insured.  *Thaler v. American Ins. Co.,* 34 Mass. App. Ct. 639, 643, 614 N.E.2d 1021, 1023 (1993).  In overruling *Thaler*, the Court stated:

> The insurer has a duty to its insured.  If it does not fulfill that duty, it may violate G. L. c. 176D, § 3(9), and be liable to its insured.  *See Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 120 (1994).  If we read § 3(9)(f) as requiring payment of the policy limit without a settlement of claims against the insured, then an insurance company would be forced to watch both flanks.  On one side, the company may be sued for unfair settlement practices by a claimant disgruntled by the company's failure to pay, and, on the other side, the company may be sued by an insured disgruntled by the company's payment of the policy limit without obtaining a release.  *We do not construe G. L. c. 176D, § 3(9)(f), to place insurers in such a position.*

*Id.* at 506, emphasis added.

In asking that its duties to its media insureds be harmonized with its duties to third party claimants under c. 176D, Mutual is not claiming it is exempt from an unfair insurance practices claim under Massachusetts law.  Rather, where its policy attaches excess of the Herald's self-insured retention and the policy gives the Herald control over the settlement, Mutual's duty to settle a third party-claim under c. 176D § 3(9)(f) does not arise until the Herald requests its permission to settle.  See *Clegg v. Butler*, 424 Mass. 413, 421 n. 8, 676 N.E.2d 1134, 1140

(1997)(until the primary insurer was prepared to offer its policy limits the excess insurer has no obligation to act); *Rhodes v. AIG Domestic Claims, Inc.,* 2008 Mass. Super. Lexis 169 (until the primary insurer tendered its policy limits, the excess insurer had no duty to a plaintiff to settle under c. 176 § 3(9)(f).)

If the Herald requested Mutual permission to settle and Mutual withheld its consent, its conduct would then properly be subject to scrutiny and potential liability under c. 176D § 3(9)(f). Such a holding would harmonize Mutual's duty to settle a third party claim under c. 176D § 3(9)(f) with the terms of its policy it issued to the Herald.  In circumstances where the Herald controlled its defense and controlled settlement and it elected to defend itself, Mutual did not violate c. 93A or c. 176D by not settling Judge Murphy's claim and it is entitled to summary judgment.

## CONCLUSION

For all of the above reasons, summary judgment should be granted to Mutual on Count I of its Complaint and on Judge Murphy's Counterclaim.

Respectfully Submitted,

MUTUAL INSURANCE COMPANY, LIMITED
By its attorneys,

Dated: September 29, 2008

/s/Joseph S. Sano_____
Joseph S. Sano, BBO #545706
Thomas M. Elcock, BBO #542807
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
617-456-8000

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 29, 2008.

_____/s/ Joseph S. Sano_____
Joseph S. Sano