UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                              )
Mutual Insurance Company,     )
Limited,                      )
        Plaintiff,            )
                              )
v.                            )    Civil Action No.  07-11532 PBS
                              )
The Honorable Ernest B.       )
Murphy,                       )
        Defendant.            )
_____)
```

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT MUTUAL INSURANCE COMPANY, LTD'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff, Mutual Insurance Company Limited ("Mutual"), pursuant to D. Mass. Local R. 56.1, states that there are no genuine triable issue with respect to the following facts:

**A.    Judge Murphy's Defamation Suit Against The Boston Herald.**

1.    On June 3, 2002, Honorable Ernest B. Murphy ("Judge Murphy") commenced a defamation action in the Massachusetts Superior Court against the Boston Herald ("Herald") and four Herald reporters and columnists: David Wedge, Jules Crittenden, Margery Egan and David Weber.  (*See* Mutual's Complaint, ¶ 1 attached as Exhibit 1 and Judge Murphy's Answer and Counterclaim, ¶ 1 attached as Exhibit 2.)

2.    The trial of Judge Murphy's defamation action took place in January and February 2005.  (Exs. 1 and 2, ¶¶ 18.)

3.    At the conclusion of Judge Murphy's case, the trial court directed verdicts for Ms. Egan and Mr. Weber.  (Exs. 1 and 2, ¶¶ 19.)

4.    At the conclusion of the evidence, the trial judge submitted 61 of the 67 alleged defamatory statements claimed by Judge Murphy to the jury.  (Exs. 1 and 2, ¶¶ 19.)

1

5.     After four days of deliberation, the jury returned a verdict in favor of Judge Murphy and against the Herald and Mr. Wedge.  (Exs. 1 and 2, ¶¶ 20.)

6.     The Jury rejected Judge Murphy's claims against Mr. Crittenden.  (*See Murphy v. Boston Herald, Inc.*, 449 Mass. 42, 46 and n. 4 (2007) attached as Exhibit 3.)

7.     In rendering its verdict, the jury completed a 22-page special verdict questionnaire that required the jury to determine if each of the 61 alleged statements claimed by Judge Murphy were defamatory.  (Ex. 3, pg. 46 and n. 4.)

8.     The jury rejected or was deadlocked as to 39 of 61 alleged defamatory statements and found in favor of Judge Murphy as to 22 of the alleged statements.  (Ex. 3, pg. 46 and n. 4.)

9.     Damages of $2.09 million were awarded to Judge Murphy against the Herald and Mr. Wedge.  (Ex. 3, pg. 46.)

10.    On October 19, 2005, the trial judge allowed, in part, the Herald and Mr. Wedge's motion for judgment notwithstanding the verdict, and denied motions for new trial and remittitur. (Ex. 3, pg. 47.)

11.    In allowing in part the motion for judgment notwithstanding the verdict, the court rejected the jury's findings with respect to three of the alleged defamatory statements, and reduced Judge Murphy's damages by $80,000.  (Ex. 3, pg. 47.)

12.    The Herald and Mr. Wedge timely appealed; Judge Murphy cross-appealed and the Massachusetts Supreme Judicial Court ("SJC") granted the Herald and Mr. Wedge's Application For Direct Appellate Review.  (Ex. 3, pg. 47.)

13.    On May 7, 2007, the SJC issued an extensive decision affirming the Judgment as modified by the Court.  (Ex. 3.)

14. On June 7, 2007, three days after the SJC denied the Petition For Rehearing, the $3,414,687 Judgment in favor of Judge Murphy was satisfied in full, including all accrued post-judgment interest. (Exs. 1 and 2, ¶ 47, *see also*, Ex. 8, pgs. 41-42, Ex. 10, pg. 135.)

**B.  Judge Murphy's c. 93A Demand Letter**

15. After receiving $3,414,687 in satisfaction of the defamation Judgment, on July 17, 2007, Judge Murphy made a demand on Mutual pursuant to c. 93A. (*See* Judge Murphy Demand Letter attached as Exhibit 4.)

16. In his c. 93A demand letter, Judge Murphy alleged Mutual committed unfair and deceptive acts in refusing to effect a prompt settlement after the liability of the Herald was reasonably clear and arising from Mutual's purported failure to conduct a reasonable investigation before refusing to satisfy the defamation Judgment. (Ex. 4, pg. 2.)

17. Judge Murphy's demand letter alleges that Herald's appeal from the jury's verdict "had no realistic prospects for success" and further alleges that Mutual acted in a knowing and willful unfair and deceptive manner violating c. 93A and c. 176D in four specific ways:

1. Mutual refused to satisfy the judgment or even entertain making a settlement offer when the liability of the Herald was reasonably clear;

2. Mutual raised a series of frivolous legal arguments to explain why it had limited obligations to the Herald and why it had no obligation whatsoever to Judge Murphy;

3. Mutual failed to conduct a meaningful investigation before it declined to make an offer of settlement; and

4. Mutual, as an insurer for media companies, pursued an appeal from the Jury Verdict to advance its own institutional interests and acted without regard to the factual and legal merits of the matter.

(Ex. 4, pg. 2.)

3

18. The letter demanded Mutual pay Judge Murphy $6,800,000 is satisfaction of his c. 93A claim. (Ex. 4, pg. 3.)

19. Judge Murphy's demand letter failed to quantify any damages he suffered as a result of Mutual's alleged violations of c. 93A and c. 176D. (Ex. 4.)

20. On August 17, 2007, Mutual made a written offer to Judge Murphy to settle pursuant to c. 93A, § 9(3). (*See* Mutual's c. 93A Response Letter attached as Exhibit 5.)

21. Mutual offered one hundred dollars in settlement of Judge Murphy's claims, twenty-five dollars for each of the four alleged violations identified in his demand letter. (Ex. 5, pg. 17-18.)

22. This offer reflected the statutory damages set forth in c. 93A §9 (3) of twenty-five dollar for each purported c. 93A violation where no actual damges were suffered. (Ex. 5, pg. 18.)

**C.   Mutual's Declaratory Judgment Action.**

23. On August 17, 2007, Mutual commenced this action under 28 U.S.C. § 2201 seeking a declaration of its non-liability under c. 93A and c. 176D. (Ex. 1.)

24. Mutual requested a declaration that it has acted lawfully and has not violated c. 93A or c. 176D for multiple reasons, including that under the terms of its policy with the Herald, the Herald, not Mutual, controlled the defense and settlement of Judge Murphy's defamation action. (Ex. 1.)

25. Judge Murphy answered Mutual's Complaint and asserted a Counterclaim. (Ex. 2.)

26. In his Counterclaim, Judge Murphy alleges that Mutual's conduct violated c. 176D and c. 93A. (Ex. 2, ¶ 62.)

27.     According to his answers to Mutual's interrogatories, Judge Murphy's Counterclaim arises from Mutual violating its alleged duties under c. 93A and c. 176D as follows:

> Mutual violated Chapters 176D and 93A by failing at all times to make any offer of settlement despite it being clear that its insured, The Herald, would be liable for its defamation of Judge Murphy; by failing and refusing to conduct any independent legal analysis of the merits of an appeal of the jury verdict in favor of Judge Murphy; despite expressly stating it would do so (*see* letters of Jerome Schaefer, Esq. to Howard Cooper, Esq. of March 23 and 24, 2005 and October 24, 2005) and despite being aware it was under a legal obligation to make such an analysis; and by further failing to analyze the legal merits of the appeal from the verdict in favor of Judge Murphy, while nonetheless authorizing an appeal that was entirely without legal merit .

(*See* Judge Murphy's Answers to Mutual's Interrogatories attached as Exhibit 6, answer 1.)

**C.      The Mutual Policy.**

28.     At the time Judge Murphy filed his defamation action against the Herald, the Herald was insured under a specialized policy of media insurance issued by Mutual, a Bermuda domiciled insurer. (Mutual's Policy attached as Exhibit 7 and Rule 30 (B)(6) deposition of Mutual, pg. 15, attached as Exhibit 8.)

29.     Mutual writes "a limited line of coverage designed to protect newspapers' rights under the First Amendment." (Ex. 8, pg. 63.)

30.     For many years, Mutual has provided indemnity insurance to many of the nation's largest newspapers. (*See* Affidavit of J. Schaefer filed in defamation action attached as Exhibit 9.)

31.     Mutual is owned by its directors / members and that ownership is "in the nature of a trust." (Ex. 8, pgs. 18-19.)

32.     There is nothing in Mutual's "business model" that is "profit motivated." (Ex. 8, pg. 63.)

33. Its sole purpose is "to permit publishers in this country and in this Commonwealth to publish under the First Amendment." (Ex. 8, pg. 63.)

34. If Mutual were to be dissolved, its Articles of Incorporation calls for all of its net proceeds "to be paid out to a non-profit organization in North America that supports the First Amendment principles." (Ex. 8, pgs. 18-19.)

35. The Mutual policy is not a traditional liability policy covering the first dollar of loss. (Ex. 8, pgs. 43, 58-60.)

36. The Mutual policy attaches excess of an insured's self-insured retention. (Ex. 7, Bates numbered pg. MUT 3147, Declarations, Ex. 8, pgs. 43, 58-60.)

37. The Mutual policy does not impose a duty on Mutual to defend its insured. (Ex. 7, Bates numbered pg. MUT 3148, MUT 3154, Section VIII(B)(3), Ex. 8, pgs. 43, 58-60.)

38. The Mutual policy does not give Mutual control over the settlement of claims made against its insureds. (Ex. 7, Bates numbered pgs. MUT 3148-3149, Section I; Ex. 8, pgs. 43, 58-60.)

39. Under the terms of its policy issued to the Herald, Mutual is obligated only to "indemnify" the Herald for any loss sustained by the Herald in excess of its retention "by reason of liability imposed by law…" arising out of, *inter alia*, libel. (Ex. 7, Bates numbered pgs. MUT 3148-3149, Section I,.)

40. Under the Mutual policy, the Herald retains the first $50,000 of loss including defense expense for each event. (Ex. 7, Bates numbered pg. MUT 3147, Declarations.)

41. After the exhaustion of Herald's $50,000 self-insured retention, the Herald is responsible for 20% of all remaining defense expense up to a maximum retention of $500,000. (Ex. 7, Bates numbered pg. MUT 3147, Declarations and Ex. 8, pg. 21.)

42. If the Herald became aware of facts or circumstances that may lead to a claim or suit, the Herald was to conduct an investigation. (Ex. 7, Bates numbered pg. MUT 3153, Section VIII(B)(1).)

43. If a claim or suit was brought, the Herald was obligated to retain counsel, subject to Mutual's approval, "for the defense or *settlement* of such claim or suit…" (Ex. 7, Bates numbered pg. MUT 3154, Section VIII(B)(2)(b) emphasis added.)

44. Under the policy, Mutual did not have the right nor the duty to defend the Herald or settle any claim. (Ex. 8, pg. 57-60.)

45. The first page of Mutual's policy states:

THE COMPANY DOES NOT HAVE THE DUTY TO DEFEND ANY CLAIMS MADE, OR SUIT BROUGHT, OR PROCEEDING INSTITUTED AGAINST THE INSURED.

(Ex. 7, Bates numbered pg. MUT 3148 emphasis in original.)

46. Section VIII of the Mutual policy provides: "The Company shall not be called upon to assume charge of the settlement, or the defense of any claim made, or suit brought, or proceeding instituted against the insured…" (Ex. 7, Bates numbered pg. MUT 3154, Section VIII(B)(3).)

47. The Herald and Mutual acknowledge and agree that Mutual had no duty to defend the Herald. (Ex. 8, pg. 42 and 30(B)(6) deposition of the Boston Herald attached as Exhibit 10, pg. 31.)

48. The Mutual policy provides that the Herald cannot settle any claim without Mutual's consent, but "such consent not to be unreasonably withheld." (Ex. 7, Bates numbered pg. MUT 3154, Section VIII(B)(3).)

49. Mutual did not have the right to settle Judge Murphy's defamation claim against the Herald's wishes. (Ex. 10, pgs. 43-44, 102, 105.)

50. The Herald never requested Mutual's consent to settle Judge Murphy's claim (Ex. 8, pg. 79-80; Ex. 10, pg. 155.)

51. Judge Murphy and his counsel have been aware of the terms and conditions of the Mutual policy since it was produced during discovery in the defamation litigation. (Exs. 1 and 2, ¶¶ 54.)

### D. The Herald Controlled The Defense And Settlement Of Judge Murphy's Claims.

52. Upon learning of Judge Murphy's claim in May of 2002, the Herald retained Brown Rudnick, the law firm that has handled all of its general liability and media liability work since at least 1994. (Ex. 10, pgs. 16-17, 39.)

53. The Herald was self-insured with respect to its $50,000 retention and the Mutual policy provided coverage on an excess basis over $50,000. (Ex. 10, pgs. 21, 156.)

54. The Herald had the duty to defend itself and to choose its own counsel. (Ex. 8, pg. 60, Ex. 10, pg. 31, 98.)

55. The Herald paid Brown Rudnick's attorneys' fees directly to the law firm and then sought reimbursement from Mutual. (Ex. 10, pgs. 67-68, 74-75.)

56. Brown Rudnick on behalf of the Herald made periodic reports to Mutual as required by the policy. (Ex. 8, pgs. 42, 62, 65; Ex. 10, pg. 79.)

57. At least up through the filing of the Herald's appellate brief, the Herald's co-insurance obligation maximum of $500,000 had not been met. (Ex. 10, pg. 27.)

58. From the commencement of Judge Murphy's defamation action through the denial of the Herald's Petition For Reconsideration by the SJC, the Herald controlled its own defense. (Ex. 8, pgs. 66-67, 70-71; Ex. 10, pgs. 48-50, 97.)

59. As explained by Jerome Schaefer, Esq., Mutual's U.S. General Counsel and President as well as Mutual's 30(B)(6) designee:

> What insureds on this type of policy pay for is the right to defend the case, and that's what insureds pay for. This policy does not have a hammer clause. It doesn't have other clauses that you might find in your professional liability coverage that limit you as an insured's right to manage the defense of a claim that goes to the heart of your practice of law. This policy does not have that. This policy gives the insured the full panoply of rights it has under the First Amendment. That's what it's designed to do.[1]

(Ex. 8, pgs. 66-67.)

60. The Herald expected that it would win the defamation case based on the belief that its stories and coverage was correct. (Ex. 10, pg. 94.)

61. During the pendency of the defamation action, the Herald never requested Mutual's consent to settle Judge Murphy's claim. (Ex. 10, pg. 155.)

62. The Herald knew that Mutual did not have the right to settle Judge Murphy's claim without its permission. (Ex. 10, pgs. 43-44, 102, 105.)

63. Mutual also knew it could not settle Judge Murphy's claim without the Herald's consent. (Ex. 8, pgs. 70-71.)

64. The Herald was very unhappy it lost the trial and "believed that the reporter got the story correct." (Ex. 10, pg. 44.)

---

[1] According to the Insurance Glossary of the International Risk Management Institute, a "hammer clause" also known as "blackmail settlement clause" found in professional liability insurance policies "requires an insurer to seek an insured's approval prior to settling a claim for a specific amount. However, if the insured does not approve the recommended figure, the consent to settlement clause states that the insurer will not be liable for any additional monies required to settle the claim or for the defense costs that accrue from the point after the settlement recommendation is made by the insurer."

9

65. Prior to the return of the jury's verdict, Mutual had not been involved in any way in shaping the Herald's defense. (Ex. 8, pg. 77.)

66. The Herald made the decision to appeal. (Ex. 8, pgs 76, 128-129; Ex. 10, pg. 46.)

67. There was never a time when the Herald was unwilling to appeal the jury verdict. (Ex. 10, pg. 32.)

68. The Herald "believed in its reporting in the case, and [it] planned to defend the reporter and to defend the reputation of the paper and to appeal the case." (Ex. 10, pg. 112.)

69. The Herald was "not interested in settling the case at the time [it] made the decision to appeal the verdict." (Ex. 10, pg. 124.)

70. Mutual had "no role" in the decision to appeal. (Ex. 8, pg. 129.)

71. The Herald wanted new counsel for the appeal. (Ex. 8, pg. 80-81; Ex. 10, pg. 46.)

72. As part of the Herald's selection of new counsel, Mutual suggested that appellate counsel conduct an objective review of the trial prior to filing the appeal. (Ex. 8, pg. 76.)

73. Mutual suggested this objective review "as opposed to simply noting the appeal and charging forward." (Ex. 8, pg. 76.)

74. The Herald engaged Attorney Bruce Sanford of the Washington, D.C. firm Baker & Hostetler to be its appellate counsel. (Ex. 8, pgs 84-85; Ex. 10, pg. 17.)

75. Attorney Bruce Sanford was the Herald's choice for appellate counsel. (Ex. 8, pg. 124-126.)

76. Baker & Hostetler represented the Herald on labor law matters. (Ex. 8, pgs. 83-84; 124-125, 127; Ex. 10 pg. 17, 114.)

77. It was the decision of the Herald's Publisher, Mr. Purcell, to hire Baker & Hostetler for the appeal. (Ex. 8, pgs. 83-84; 124-125, 127; Ex. 10 pg. 17, 114.)

78. Baker & Hofstetler was to review the case and the verdict and to advise the Herald as to the merits of the appeal. (Ex. 10, pg. 113.)

79. The Herald had a very good relationship with the Baker & Hofstetler firm. (Ex. 10, pg. 114.)

80. As requested by Mr. Purcell, Mutual provided to the Herald names of experienced appellate counsel who were qualified to provide an objective opinion of the merits of the appeal and were qualified to handle the appeal. (Ex. 8, pg. 81, 83-84, 125, 159-160.)

81. In terms of deciding whether to hire new counsel or stay with Brown Rudnick or the selection of new counsel, Mutual did not have any part in those decisions. (Ex. 8, pg. 84.)

82. The decisions to hire new counsel and the selection of new appellate counsel were made solely by the Herald. (Ex. 8, pg. 84.)

83. While post-trial motions were pending before the Superior Court, Mutual jointly engage Baker & Hostetler with the Herald to evaluate the appeal. (Ex. 8, pg. 93-95.)

84. Mutual and the Herald had a "common interest" and wanted to make sure they were "not tilting at windmills." (Ex. 8, pg. 87-88.)

85. Baker & Hostetler gave an objective opinion as to the probability of the success of the appeal to Mutual and the Herald. (Ex. 8, pg. 95.)

86. Baker & Hostetler's joint representation of the Herald and Mutual ended on November 8, 2005, the day Attorney Stanford issued his opinion as to the probability of overturning the verdict. (Ex. 8, pgs. 95-96, Ex. 10, pg. 115 and Affidavit of Jeffery Magram attached as Exhibit 11.)

87. Six days after Attorney Stanford issued his opinion, on November 14, 2005, the Herald and Mr. Wedge filed a their Notice of Appeal. (Exs. 1 and 2, ¶¶ 33.)

88. No further work was performed by Baker & Hostetler for Mutual after November 8, 2005.

89. Mr. Purcell was intent on defending his reporter and the reputation of the paper. (Ex. 10, pg. 119-123.)

90. The SJC's decision was a surprise and a disappointment to the Herald's management. (Ex. 10, pg. 140.)

**E.     Satisfaction of the Defamation Judgment**

91. After the denial of a Petition For Rehearing filed by the Herald and Mr. Wedge, the Herald decided not to file a petition seeking certiorari from the Supreme Court and to pay the Judgment. (Ex. 10, 137-140.)

92. Counsel for the Herald and Judge Murphy calculated the amount of the Judgment including all accrued post-judgment interest. (Ex. 8, pg. 41-42, 195.)

93. The Herald authorized Mutual to pay the agreed (as between the Herald and Mutual) reimbursement to the Herald's counsel for transmittal to Murphy. (Ex. 8, pg. 41-42, 195; Ex.. 11, pg. 135.)

94. Mutual wired $3.4 million to the Herald's counsel. (Ex. 8, pg. 41-42.)

95. On June 7, 2007, three days after the SJC denied the Petition For Rehearing, the Judgment in favor of Judge Murphy was satisfied in full, including all accrued pre-judgment and post-judgment interest. (Ex. 8, pgs. 41-42; Ex 11, pg. 135.)

96. According to his answers to interrogatories, Judge Murphy has suffered no damages as a result of Mutual's purported violations of c. 93A and c. 176D. (Ex. 6, interrogatory answers 2, 3, 4, 5, 6, 7, 8, 9 and 10.)

        Respectfully Submitted,

        MUTUAL INSURANCE COMPANY, LIMITED

        By its attorneys,

        /s/Joseph S. Sano\
        Joseph S. Sano, BBO #545706\
        Thomas M. Elcock, BBO #542807\
        PRINCE, LOBEL, GLOVSKY & TYE LLP\
        100 Cambridge Street, Suite 2200\
        Boston, MA 02114\
        617-456-8000

Dated: September 29, 2008

CERTIFICATE OF SERVICE

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 29, 2008.

        /s/ Joseph S. Sano\
        Joseph S. Sano