### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **MUTUAL INSURANCE COMPANY LIMITED,** ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
| **v.** ) | **C. A. No.07-cv-11532-PBS** |
| ) | |
| **THE HONORABLE ERNEST B. MURPHY,** ) | |
| ) | |
|       **Defendant.** ) | |
| _____ ) | |

### THE HONORABLE ERNEST B. MURPHY'S OPPOSITION TO MUTUAL INSURANCE COMPANY, LIMITED'S MOTION FOR SUMMARY JUDGMENT

The Honorable Ernest B. Murphy ("Judge Murphy") submits the following memorandum in opposition to Mutual Insurance Company, Limited, ("Mutual")'s Motion for Summary Judgment.

### PRELIMINARY STATEMENT

This action arises from Mutual's claim-handling practices regarding the libel claim brought by The Honorable Ernest B. Murphy, against The Boston Herald ("The Herald").  In particular, Judge Murphy alleges that Mutual failed to make an offer of settlement after the liability of its insured, The Herald, became reasonably clear.  Judge Murphy further alleges that Mutual failed to make a good faith investigation into the liability of The Herald, but instead authorized, and indeed even insisted upon, pursuing an appeal with no meaningful chance of success.

Now, in its summary judgment motion, Mutual asserts that under the terms of its insurance policy with The Herald (the "Policy"), Mutual had no control over decisions

regarding settlement of the claim and, therefore, had no "exclusive" duty to settle.  Mutual then argues that because it purportedly lacked this duty under the Policy, it cannot be found in breach of its duty to settle under Chapter 176D.  Mutual attempts to bolster this assertion by claiming that, due to a "retention" amount of $50,000 (pursuant to which The Herald was to pay the first $50,000 of any settlement or judgment), Mutual is in effect an "excess" insurer whose obligations to settle do not arise until the "primary" policy—the $50,000 retention—is exhausted.  Finally, Mutual argues that it cannot have a duty to settle because imposing any such obligation would be inconsistent with its existing duties to its insured, in particular, its purported obligation to allow the insured to control the decision of whether or not to settle a claim.

Each of the reasons advanced by Mutual fails to provide a basis for dismissing Judge Murphy's claims.  First, under the terms of the Policy, Mutual is granted control of the litigation, including control of the settlement of claims.  The first underlying factual premise of Mutual's motion (that it had no control) is not only disputed, but is a manifest fraud.

Furthermore, the facts in this matter make clear that Mutual not only had the right to control claims, but also that Mutual actually did exercise substantial control over the defense and settlement of the libel case.  Jerome Schaefer, the President and General Counsel of Mutual, makes the bare assertion that The Herald controlled defense and settlement, and then Mutual asks this Court to credit that assertion and grant summary judgment.  The evidence, however, is clear that after the verdict of over $2 million against The Herald, Mutual suggested that new counsel be hired, and thereafter, Mutual was heavily involved in the significant strategy, litigation, and settlement decisions.

Nowhere was this more so than with respect to consideration of settlement.  The evidence makes clear that in May of 2007, after the Supreme Judicial Court had resoundingly and unanimously upheld the verdict, but while an ill-fated motion for reconsideration was pending, Mutual gave active consideration, with its counsel and appellate counsel, to settlement.  The Herald's trial counsel and principals were not involved in these discussions. Under no circumstance do any undisputed facts lead to the conclusion that Mutual had no control over settlement.  On the contrary, the factual record plainly supports the inference that Mutual had the right to control the libel case under the Policy and exercised those rights.

Second, Mutual is not an "excess" insurer who is immune from settlement obligations until a "primary" policy is exhausted.  Under Massachusetts law, a modest retention amount does not extinguish an insurer's obligation to settle the liability of its insured.  Despite the sound and fury of Mutual's legal discussion, Massachusetts law is actually clear and simple on this question.  Where it is reasonably clear that a claim can be settled within the retention, the insurer's duty to settle does not arise.  Yet here, Judge Murphy had a verdict of over $2 million, the Policy limits were $15 million, and the retention was a mere $50,000.  It is a ludicrous contention that Mutual could "reasonably conclude" the matter could be settled with The Herald's retention.

Third, there is no inconsistency in requiring Mutual to comply with its obligations under Chapters 176D and 93A, as well as recognizing its duties to its insured.  Mutual's obligations to Judge Murphy are created by the Policy and Chapter 176D and are enforceable in accordance with their terms.

## FACTS

### *The Policy*

Mutual is an insurance company, based in Bermuda, which is engaged in the business of writing First Amendment media liability insurance.  (Judge Murphy's Additional Statement of Facts, hereinafter "Murphy SUF", at 1.)  Most of Mutual's insureds are newspaper owners, and some also own local broadcast companies.  (Murphy SUF at 2.)  Mutual insured The Boston Herald and The Herald Media, Inc., (hereinafter "The Herald") from June 1994 until 2005.  (Murphy SUF at 3.)

From June 30, 2000, to June 30, 2001, Mutual insured The Herald under Policy No. 694-1140 (the "Policy").  The Policy consisted of Mutual's Group Policy No. 2000CM, as well as eight separate endorsements.  (Murphy SUF at 5.)  The Policy obligated Mutual to indemnify The Herald for damages arising out of, among other things, libel, slander, product or personal disparagement, trade libel, or other related forms of defamation or tort.  (*Id.* at 6.)  The limit of liability under the Policy was $15 million, and The Herald was responsible for a $50,000 retention, as well as 20% of defense expenses (up to $500,000).  (*Id.* at 7.)

Mutual seeks to characterize the Policy as something other than a "traditional liability policy," without any "duty to defend."  This is pure sophistry.  The Policy contains a number of provisions which afford Mutual the right to be heavily, indeed jointly, involved in the defense of litigation.  Mutual made consistent use of these rights throughout the litigation.

First, The Herald suffered numerous "disclosure and reporting" obligations to Mutual under the terms of the Policy.  (Murphy SUF at 8.)  Once a claim is made or suit is brought against The Herald, it has an obligation to (a) give Mutual prompt notice of the defamation claim or suit; (b) retain counsel for the defense or settlement of the claim (and notify Mutual of

the identity of the counsel); (c) provide status updates to Mutual at least every six months; (d) provide Mutual with the complaint and other legal documents; and (e) file a notice of appearance and pleadings within the time period required by law. (*Id.*)  The purpose of these obligations is to ensure that Mutual could oversee and involve itself in any litigation that would likely result in a claim under the Policy.

Importantly, Mutual retained critical rights to participate in the conduct of the litigation itself.  The Policy expressly states that, Mutual "shall have the right and shall be given the opportunity to associate with [The Herald] in the defense and control of any claim, suit or proceeding which involves, or appears likely to involve, payment by the Company, in which event [The Herald and Mutual] shall cooperate fully in the defense or settlement of such claim, suit or proceeding."  (Murphy SUF at 9.)

Mutual could, if dissatisfied with The Herald's counsel, "suggest the replacement thereof with new counsel to be jointly appointed by The Herald and Mutual."  (Murphy SUF at 10-12.)  The Herald could not "unreasonably deny" Mutual's request for new counsel. Furthermore, Mutual could not "unreasonably withhold" its consent to settle.  (*Id.*)

Finally, Mutual retained the right, if The Herald was unwilling to appeal from a judgment, to appeal the judgment itself, bearing the costs thereof.  (Murphy SUF at 13-14.)  In the final analysis, Mutual, if necessary to protect its rights, had the opportunity to take over the case to protect its interests before making any indemnity payment.  In other words, if the parties' wishes were ultimately in conflict (concerning the appeal of an adverse judgment), the rights of The Herald as the insured, gave way to the rights of the insurer, to control the case.

*The Libel Case*

On June 3, 2002, Judge Murphy asserted a claim of libel (captioned *The Honorable Ernest B. Murphy v. Boston Herald, Inc.*, **Civ. Action No. 02-2424B (Suffolk County)) against The Herald and several of its reporters, including David Wedge (hereinafter, the "Libel Case"). (Murphy SUF at 14.)  The Libel Case was tried to a jury in January 2005, and on February 19, 2005, the jury returned a verdict in favor of Judge Murphy for approximately $2.09 million.  (Murphy SUF at 15.)  On March 11, 2005, The Herald filed various post-trial motions, seeking to vacate the verdict.  The motions were denied in substantial part in October, and The Herald filed a Notice of Appeal on November 11, 2005.  (Murphy SUF at 16.)**

**From the inception of the Libel Case, and through the trial, The Herald was represented by Brown Rudnick, LLP.  At some point after the jury's verdict, Mutual "suggested," consistent with the terms of the Policy, that The Herald hire new counsel for the appeal.  (Murphy SUF at 10.)  Mutual "suggested" the law firm of Baker Hostetler, LLP, and The Herald and Mutual jointly determined to retain Bruce Sanford of Baker Hostetler, as of May 12, 2005.  (Murphy SUF at 18.)  Mr. Sanford's charge was evidently to evaluate the issues and merits concerning The Herald's potential appeal of the verdict in the Libel Case. (Judge Murphy's Response to Mutual's Statement of Undisputed Material Facts in Support of its Motion For Summary Judgment, hereinafter "Murphy RSUF" at 71.)**

**On November 11, 2005, The Herald filed a Notice of Appeal.  (Murphy RSUF at 87.) At a minimum, from this point on and until the Supreme Judicial Court denied The Herald's Petition for Rehearing in May, 2007, Mutual and The Herald steadfastly refused to engage in any settlement negotiations.  (Murphy RSUF at 19.)**

During this entire time, Mutual was directly engaged in discussions with The Herald concerning the defense strategy for the Libel Case.  (Murphy RSUF at 65, 69 and 88.)  Mr. Schaefer, the President and General Counsel of Mutual, sent, received, or was copied on *dozens* of e-mails with The Herald and/or its counsel regarding the case—many of them concerning "strategy" or "case analysis."[1]  (*Id.*)

In May 2007, the Supreme Judicial Court upheld the jury's verdict.  The Herald, shortly thereafter, filed a Petition for Rehearing prepared and submitted by Mr. Sanford. After that petition was filed, in the waning days of the litigation, Mutual, with its counsel, clearly gave active consideration to making a settlement offer to Judge Murphy.  Importantly, these discussions involved Mutual (Jerome Schaefer), its Massachusetts counsel (Joseph Sano), and Baker Hostetler (again, selected by Mutual).  *Neither any principal from The Herald nor its counsel from Brown Rudnick participated in these discussions*.  (Murphy RSUF at 89.)

No offer of settlement was ever made by Mutual, (or by The Herald, for that matter) and on June 4, 2007, The Herald's Petition for Rehearing was denied.  (Murphy RSUF at 13; Murphy SUF at 19.)  Shortly thereafter, *Mutual*, and not The Herald, transferred $3.415 million to Mr. Sanford's law firm, Baker & Hostetler.  (Murphy RSUF at 14.)  That firm, in turn, wired it to Judge Murphy's trial counsel.  (*Id.*)  The Herald was simply not involved in this transfer of funds.  The Herald did not make payment and seek reimbursement for its "loss."  (*Id.*)  Instead, Mutual satisfied the judgment, and the Libel Case concluded.

---

[1] Judge Murphy is not privy to the content of these e-mails; Mutual has asserted that they are privileged. Pursuant to rulings in this case, the privilege is intact, but Mutual's defense that it acted reasonably because it was acting upon the advice of counsel has been stricken.

## ARGUMENT

Mutual, as an insurance company doing business in Massachusetts, is subject to Chapter 176D in its entirety.  First, the Massachusetts Supreme Judicial Court has held that Chapter 176D applies to entities "engaged in the business of insurance," and Mutual is no exception.  Mutual, both through the plain terms of the Policy and through the specific actions it took in connection with the Libel Case, exercised sufficient, and even complete, control.  Second, Mutual cannot take refuge in its comparison to "excess" insurers.  The Herald had only a minimal retention in this case, and its obligations to Mutual were triggered once a claim was filed—not once the "loss" occurred.  Finally, Mutual argues that it cannot have duties both to its insured, as well as to Judge Murphy.  This however, is how Chapter 176D is structured, and the terms of the Policy do not give Mutual an excuse to disregard its obligations to third-party claimants.

## I.   Summary Judgment Standard.

Summary judgment is only appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  *Madera v. Marsh USA, Inc.*, **426 F.3d 56, 61 (1st Cir. 2005);** *Fenton v. John Hancock Mut. Life Ins. Co.*, **400 F.3d 83, 87 (1st Cir. 2005);** *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, **986 F.2d 580, 583 (1st Cir. 1993).**  In ruling on summary judgment, all inferences must be drawn in favor of the nonmoving party.  *Masson v. New Yorker Magazine*, **501 U.S. 496, 520 (U.S. 1991);** *Madera*, **426 F.3d at 61;** *Noviello v. City of Boston*, **398 F.3d 76, 84 (1st Cir. 2005).**  Here, Mutual's motion should be denied because there are genuine disputes of material fact concerning the degree of control Mutual exercised over its insured, The Herald, and the defense and settlement of the Libel Case.

**II.      Under the Policy, Mutual retains the right to ultimately participate in and control the settlement of claims and is subject to the settlement provisions of Chapter 176D, Section 3(9).**

**A.**      *Chapter 176D applies to indemnity insurers.*

Mutual is an entity engaged in the "business of insurance" and is subject to Chapter 176D.  Chapter 176D was enacted to "encourage the settlement of insurance claims, and discourage insurers from forcing claimants into unnecessary litigation to obtain relief."  *Clegg v. Butler*, 424 Mass. 413, 418 (1997).  The obligations imposed by Chapter 176D § 3(9)(d) & (f) run not only to insureds but also to third-party claimants, as "the goal of facilitating settlement is equally desirable whether the plaintiff is an insured or a third-party claimant." *Id*.  Here, Mutual, through the plain language of the Policy, owed this duty to Judge Murphy under Chapter 176D.

Mutual asserts that it has no liability under the settlement provisions of Chapter 176D § 3(9)(f).  It argues, in effect, that any "duty to settle" arises solely from the "duty to defend" that was included traditionally in liability policies.[2]  Then Mutual claims that under the Policy, there is no duty to defend and therefore no "duty to settle," and hence (as a matter of law), Mutual cannot be held liable for a breach of Chapter 176D.

This is not the law in the Commonwealth.  The Supreme Judicial Court has addressed this issue to the effect that indemnity insurers—even those without a duty to defend—*are* subject to Chapter 176D.  *See Wilkinson v. Citation Ins. Co.*, 447 Mass. 663, 674-75 (2006).  In *Wilkinson*, the SJC determined that insureds could not recover attorneys' fees in bona fide disputes with their indemnity insurers, in contrast to the common-law rule that insurance

---

[2] Mutual cites to law from a number of jurisdictions other than Massachusetts (Memo at pp. 6-7), then makes a passing reference to the Massachusetts common law duty to settle in good faith.  Then, in discussing Chapter 176D, §3(9) Mutual, in effect, concedes the reality that there is no Massachusetts case law supporting the proposition that the obligations of § 3(9) are derived, or depend upon, the existence of a duty to defend.

companies refusing to fulfill their obligations to defend insureds are liable for attorneys' fees. The SJC noted, however, that an insured under an indemnity policy would not be without recourse if the insurer acted in bad faith.  The Court stated:  "Yet we are mindful of the concern that denying fee awards in duty to indemnify cases might encourage some insurers to deny coverage (improperly) in cases where they calculate that the policyholder will find litigation too costly. There are, however, other statutory and regulatory avenues available to counter such unfair or abusive tactics. . . .  See G. L. c. 176D (prohibiting unfair or deceptive trade practices in business of insurance.)."  The terms of Chapter 176D plainly apply to indemnity insurers.  If this were not the case, all insurance companies would style their policies as "indemnity policies," so as to avoid potential liability under Chapter 176D. [3]

> **B.** *The terms of the Policy gave Mutual "control" over the defense and settlement of the Libel Case.*

Mutual asserts that, even though it is an insurer, because it purportedly lacked control over the defense and settlement of the Libel Case, it cannot be subject to Chapter 176D § 3(9). When all is said and done, Mutual is making the assertion that only an insurer with an "exclusive" right to control the litigation can be subject to a duty to settle, and therefore subject to Chapter 176D § 3(9).

In relying upon the purported absence of a duty to defend as the basis for there being no "duty to settle," Mutual points to its supposed lack of control over the defense of claims against its insured.  Mutual relies heavily on *Toys 'R Us v. Morrison* for the proposition that only those insurers with "exclusive rights and duties to control litigation" have a duty to settle with third-party claimants.  441 Mass. 451, 455 (2004).  The *Morrison* Court, however, makes

---

[3] Mutual denies it is seeking a wholesale "exempt[ion] from an unfair insurance practices claim under Massachusetts law," but it points to no authority supporting its attempt to carve out its duty to effectuate a prompt settlement from the remainder of its Chapter 176D obligations.

no such sweeping statement.   (Nor does the Court opine, as asserted by Mutual, that only insurance companies with "exclusive" rights are subject to Chapter 176D.  The Court in Morrison notes only that one of the purposes of Chapter 176D is to prevent abuses by such companies.)  The *Morrison* Court made the limited determination that a toy company (quite unlike Mutual Insurance Company, Limited) was not engaged in the business of insurance because it chose to self insure.  Thus, *Morrison* merely establishes that a litigant (even one that self insures) cannot be liable for its litigation tactics (such as refusing to settle) under Chapter 93A and 176D.  *Morrison* manifestly does not address the question of the existence of Mutual's duty to settle as to an "insurer."

Even if, however, Massachusetts law is deemed to contain this "exclusivity" of control requirement (before a duty to settle can arise), the rights granted to Mutual by the Policy are plainly sufficient to meet that requirement.  The Policy loudly proclaims that Mutual does not have a duty to defend any claim against the insured.  (*See* Murphy RSUF at 45.)  Then, however, in its General Conditions, the Policy contains a series of provisions imposing various requirements upon the insured.  These include specific obligations such as prompt notice to Mutual, description of the claims, hiring of counsel, and providing status reports and prompt notice of a claim if the retention is likely to be exceeded.

Then, after again reiterating the nominal notice that Mutual cannot be compelled "to assume charge of the settlement and defense" of a claim[4], the Policy goes on to grant specific "*rights*" to (a) "associate" in the defense and (b) "co-operate fully" in the *defense*.  The

---

[4] Mutual actually cites to the first phrase of Section VIII(B)(3) ("The Company shall not be called on to assume charge of the settlement, or the defense of any claim, or suit brought, or proceeding against the insured . . .), but completely omits from its brief the critical remainder of the policy provision resulting in a grant of control to Mutual.  (*See* Mutual SUF at 46.)

absence of a "duty" to defend is an illusion.  If there is any likelihood of payment by Mutual on a claim, it has a full right to participate in the defense.

The provision goes on to provide that Mutual, if dissatisfied with the insured's counsel, can "suggest" new counsel, and this "suggestion" cannot be "unreasonably denied by the insured."  (Murphy RSUF at 35.)  Essentially, Mutual, if it finds it necessary, has the substantial right to impose counsel upon the insured.[5]  Finally, this provision requires that no settlement can be made without Mutual's consent, which cannot be unreasonably withheld.

Essentially, Mutual has the right to full involvement in the defense of any case.  The notion that Mutual is somehow removed from the defense by virtue of the proclamation that there is no "duty to defend" is farcical.  Once it appears likely that the $50,000 retention will be exceeded, no defense can be made to any claim without full involvement by Mutual every step of the way, and in every aspect of the case.  By any definition, the control rendered by Mutual is "exclusive."

The very next provision of the Policy states: "If a judgment is rendered in any suit against the insured, and the insured is not willing to appeal therefrom, [Mutual] shall have the right to appeal from such judgment and shall bear the costs thereof plus the interest incidental to such appeal."  This provision gives ultimate control over the litigation to Mutual.  If recovery is to be had under the Policy absent settlement then a judgment must be rendered against the insured (here, the Herald).  Settlement, however, expressly can only occur with Mutual's permission.[6]  So, Mutual has ultimate control over whether a given settlement will

---

[5] Here, of course, Mutual "suggested" that The Herald hire Mr. Sanford.

[6] Mutual cannot "unreasonably" withhold its consent, but surely this aspect of the provision is nugatory, as doing so would be a violation of any insurers duty to its insured.

occur.  If, however, Mutual withholds its consent to a settlement, then a judgment must enter if there is to be recovery from the policy – it is obviously the *sine qua non* of recovery.

In effect, under the relevant provision, when judgment enters against the insured, Mutual's control solidifies into absolute dominion.  If the insured wishes to settle at that point (i.e., it is "not willing" to appeal), then Mutual has the right to appeal, at its own expense. Mutual completely controls the defense and will be responsible for satisfying the judgment.[7] Mutual can first decide whether to settle and then, if an adverse judgment enters, can fully control the defense.

Thus, the veneer that Mutual has no "duty to defend" is torn away.  Until entry of judgment Mutual is willing to live with its "joint" control, allied with its right to choose counsel and its right to five final approval to settlements.  Then, once judgment enters, Mutual may assume full control.  This degree of control means that a good faith obligation to settle exists under Massachusetts law.

C.    *Mutual's actions in connection with the Libel Case establish that it controlled the defense and settlement of the claims against The Herald.*

Even if the terms of the Policy could somehow excuse Mutual from its obligations to Judge Murphy, there is a genuine issue of material fact as to the degree of control Mutual actually exercised over The Herald in the Libel Case.  The degree of control is a factual

---

[7] Mutual may assert that its control is not "exclusive" because, while it must consent to a settlement, it cannot compel the insured to settle against its will.  This, however, is far from clear, as parties are obliged to "cooperate fully … in the settlement of [a] claim."  In the event an insured refused to go along with a settlement Mutual desired, Mutual could assert the insured was failing to cooperate fully.  Under the final section of these provisions governing the Insured's Duties as to defense of claims, a "failure to comply" with any such obligation "may result in a denial of liability."  .

In effect, Mutual has a coercive ability to effect settlement through this provision.  Moreover, the absence of a provision stating that the insured must agree to reasonable settlements that are otherwise acceptable to the insured, does not mean this coercive power should be deemed not to exist.  The agreement was drafted by Mutual and the text of the body of the policy is essentially non-negotiable.  Under established law, this policy should be construed against Mutual.  *See Hakim v. Massachusetts Insurers' Insolvency Fund,* **425 Mass. 275, 282** **(1997)** (an insurance policy, like an adhesion contract, should be construed against the insurer).

question that is not susceptible to resolution on summary judgment.  *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.,* **Civ. Action No. 04-1866-D, 2007 U.S. Dist. LEXIS 62105, at \*18 (N.D. Tex., August 23, 2007) ("[T]he absence of a duty to defend the insured is not dispositive.** *The relevant inquiry . . . is whether [the insurer] assumed control of the litigation and settlement negotiations*. **Accordingly, the court concludes that there is a genuine fact issue that precludes summary judgment on this ground.") (emphasis added);** *see also Cent. Ill. Pub. Serv. Co. v. Agric. Ins. Co.*, **378 Ill. App. 3d 728, 736 (2008).  Here, there is a genuine issue of material fact as to the level of Mutual's involvement in the Libel Case.**

**Mutual had control over the litigation with Judge Murphy and the settlement of his claims.  To show that it had no duty to settle with Judge Murphy, Mutual must demonstrate that "the policy terms unambiguously reserved control of the defense [the insured] or that [the insurer's] conduct only amounted to participation in settlement negotiations rather than control."** *See Continental Casualty Co.,* **2007 U.S. Dist. LEXIS 62105, at \*18.  Here, the terms of the Policy, and Mutual's actual conduct, preclude it from making such a demonstration.  Once a $2 million jury verdict entered against The Herald, Mutual simply usurped defense of the claim.  (Murphy RSUF at 58.)  At this point, it owed a duty to Judge Murphy.  Mutual, despite its current protestations to the contrary,[8] recommended that The Herald retain new, appellate counsel, and The Herald did so.  (***Id.* at 71.)  Furthermore, Jerome Schaefer is the drafter and recipient of repeated e-mails, during the appeal period, sent to and from The Herald's counsel, which concerned litigation strategy.  (***Id.* at 58, 71, and 88.)  Mutual cites in its "undisputed" facts that The Herald, and not Mutual, made all litigation**

---

[8] **At his deposition, Mr. Schaefer claimed Mutual had "no role" in the selection of appellate counsel. (Murphy RSUF at 70.)**

strategy decisions, decided to appeal and wished not to settle.  The record is actually quite different.  Mutual (through Mr. Schaefer) was informed of the case's progress, including strategy decisions in the period prior to the verdict.  (*Id.* at 58.)  Then, Mutual and The Herald jointly engaged in a lengthy process regarding appeal.  The record, principally the privilege logs, makes this participation clear.  Throughout the appeal the pattern remains intact.  (*Id.* at 58, 71 and 88.)  Mr. Schaefer's bare contrary assertions of his and his company's noninvolvement in the face of this contrary evidence cannot ground a grant of summary judgment.

Settlement discussions (or the lack thereof, as the case may be) also became Mutual's exclusive province once the jury rendered its verdict.  When Mutual *finally* began to consider the possibility of settling with Judge Murphy in late May 2007, principals from The Herald were not even involved in the discussions.  Mr. Sanford, the appellate lawyer, was involved but, if anything, this confirms he was consulting directly with Mutual.  Finally, Mutual actually paid the judgment to Judge Murphy—again, without The Herald's involvement.

Mutual relies on several cases from various states, including *Sta-Rite Industries, Inc. v. Zurich, RE (U.K.) Ltd.*, **178 F.3d 883 (7th Cir. 1999)** for the proposition that the insurer must have a duty to defend in order to have a duty to settle.  (Mem. at 15.)  None of these cases discussed the role of so-called indemnity insurers that had statutory obligations (such as that imposed by Chapter 176D) to third-party claimants.  *See e.g., N'tl Union Fire Ins. Co. v. CNA Ins. Cos.*, **28 F.3d 29**, 32-33 (no reference to third-party duty; no reference to policy containing a right to suggest new counsel).  For example, in *Sta-Rite*, the excess insurer, Zurich, actually refused to become involved in the litigation.  *Sta-Rite Indus.*, **178 F.3d at 884.** Zurich reminded its insured that it was free to settle the case however it chose and seek

indemnification later.  *Id.*  Here, the evidence clearly supports Judge Murphy's position that it

was Mutual, not The Herald, controlling the defense once The Herald and Brown Rudnick lost

the jury trial.  Thus, summary judgment should be denied.

### III.  The existence of a "retention" amount of $50,000 payable by The Herald does not excuse Mutual from its settlement obligations under Chapter 176D.

Mutual argues at some length that it is an "excess liability insurer" (again because of its

purported lack of control over the defense).  Mutual appears to assert that it had no obligations

to The Herald—and vice-versa—because Mutual was only obliged to indemnify The Herald for

losses in excess of $50,000.  Apart from the obvious issue that a modest retention (especially

in a case where the third-party claimant made a $15 million demand and won a $3.4 million

judgment with interest) has no practical effect on whether the purported "excess" policy would

be implicated, the plain terms of the Policy make clear that Mutual is not simply an "excess"

insurer.  Once again, The Herald had an obligation to (a) inform Mutual "promptly" of any

claims, (b) retain counsel, and (c) provide regular litigation updates to Mutual.  (Murphy

RSUF at ¶ 35.)

Mutual's argument completely disregards Massachusetts law.  In *O'Connell v. Reliance

Ins. Co.*, the court held that an insurer who refused to participate in settlement cannot be sued

under Chapters 93A and 176D, if it could "reasonably conclude" that it had no duty with

respect to a claim because the claim would be "clearly within [the] retention."  50 Mass. App.

Ct. at 337.  In *O'Connell*, the plaintiff broke her wrist and sued the insured.  *Id.* at 335.  The

claim was settled for $22,270.  The insured filed for bankruptcy and O'Connell sued the

insurer under Chapters 176D and 93A.  The insurer defended on the basis that it had no

obligation to act until the retention (which was $250,000) was paid.  *Id.*  The Court held that

the insurer had been within its rights to refuse coverage since the claim was "clearly within" the retention.  *Id*. at 337.

Here, at no time was it clear that Murphy's claim would be within the retention.  On the contrary, once the $2 million verdict existed, a likely liability *forty times* greater than the retention existed.  This can dramatically be contrasted with *O'Connell* where the claim settled for less than 10% of the retention amount.  Indeed, there was surely never a time even before the verdict when it was clear that Murphy's claim would be resolved within the retention.

Likewise, Mutual has argued that its position is identical to that of the excess insurer in *Morrison*, an insurer that would pay claims in excess of $1 million.  *See Morrison*, 441 Mass. at 451.  Mutual's argument fails because there is no indication in *Morrison* that Toys 'R Us had any obligations to the excess insurer until the $1 million limit had been reached.  *Id*.  In contrast, all of The Herald's obligations kicked in immediately—once it was aware of a claim unless it was clear the claim would be resolved within the $50,000 retention.

Mutual's comparison to the excess insurer in *Clegg* suffers similar deficiencies.[9]  In *Clegg*, the excess insurer had "no obligation or incentive to make an explicit commitment until the primary insurer [had] acted."  *Clegg*, 424 Mass. at 413, 421.  Here, Mutual's obligations (and rights) were triggered once The Herald became aware of the claim.  It is simply contrary to the facts to argue, as Mutual now does, that it was entirely "hands off" until The Herald had paid Judge Murphy $50,000, in a multi-million dollar case.

---

[9] Other cases relied upon by Mutual are easily distinguishable.  *See e.g., Tilton v. National Union Fire Ins. Co.*, Civ. Action No. 07-10163, 2008 U.S. Dist. LEXIS 22200 (D. Mass. March 20, 2008) (insured had a fronting policy and had no obligation (and did not) notify excess insurer of claim, and excess insurer remained uninvolved and uninformed in all aspects of the claim); *Rhodes v. AIG Domestic Claims,* 2008 Mass. Super. LEXIS 169 (Gants, J.) (same).

IV.    **Insurance companies, under the terms of Mass. Gen. Laws ch. 176D have duties both
to their insureds and third-party claimants.**

Mutual and The Herald, under the terms of the Policy, were (at a minimum) *jointly* to
handle the litigation and settlement of the claim.  The terms of the Policy make this clear.  The
conduct of Mutual—the fact that it suggested new counsel for The Herald's appeal; that it
participated heavily in appellate strategy; and that it ultimately, alone, considered whether to
settle with Judge Murphy—make even clearer that Mutual was in substantial, if not total,
control of The Herald's defense.  (Murphy RSUF at 54, 58 and 71.)  Mutual, nonetheless,
asserts that it is somehow unfair that it should have duties to both its insured and third-party
claimants.

Mutual cites to a number of inapposite cases to try to bolster its position.  For example,
the court in *Lazaris v. Metropolitan Prop. & Cas. Ins. Co*., found that an insurance company
had the right to demand a release from a third-party claimant in exchange for a monetary
settlement within policy limits.[10]  428 Mass. 502, 703 (1998).  If the rule were otherwise (and
the insurance company had to pay the claim without demanding a release), the court noted,
then the insured would be left in the position of still facing a pending lawsuit without any
remaining insurance coverage.  *Id*.  This, as the court found, is an untenable position for the
insurance company.  But here, Judge Murphy would have certainly signed a release—there is
no contention he would have refused to do so.

Mutual violated its statutory obligation to Judge Murphy.  The legislature, in the case
of Chapter 176D §3(9)(d) and (f) determined that insurance companies would owe duties, not

_____

[10] *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 845-35 (1st Cir. 1990) can also be easily
distinguished.  In that case, in the section relied upon by Mutual, the court discussed the fact that an insurer did
not have an obligation to maximize third-party claimants' recoveries—that was the responsibility of their
attorneys.

only to their insured, but also to third-party claimants.  These duties are enforced by the

courts.  *See e.g., Tallent v. Liberty Mut. Ins. Co.*, **Civ. Action No. 1997-1777H, 2005 WL**

**1239284 (Mass. Super. April 22, 2005).  Mutual drafted a policy giving it the right to oversee**

**the litigation and settlement of The Herald's claims, and then acted in accordance with, and to**

**the limit of, those rights.  It cannot now claim that the law is unfair.**

<u>CONCLUSION</u>

Because Mutual is subject to Mass. Gen. Laws Chapter 176D, including § 3(9)(d) and

(f), Judge Murphy respectfully requests that the Court deny Mutual's Motion for Summary

Judgment.

ERNEST B. MURPHY

By his attorneys,

/s/ Sarah P. Kelly
Stephen J. Brake (BBO# 546972)
Sarah P. Kelly (BBO# 664267)
Nutter McClennen & Fish, LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Dated: November 4, 2008

<u>CERTIFICATE OF SERVICE</u>

I, Sarah P. Kelly, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 4, 2008.

/s/ Sarah P. Kelly
Sarah P. Kelly

1776916.3